FILED
SUPERIOR COURT
OF GUAM

2018 MAR -1 PM 4: 23

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE<br><br>of<br><br>RITA MANIBUSAN DOMINGUEZ,<br><br>Deceased,<br><br>by<br><br>ARMANDO S. DOMINGUEZ,<br>Petitioner. | **PROBATE CASE NO. PR0037-17**<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

Following an Objection to Petitioner Armando S. Dominguez's Proposed Petition for Closing and Final Distribution, the Court heard testimony on November 22, 2017 concerning whether Decedent Rita M. Dominguez's separate property transmuted to community property.[1] The Court makes the following Findings of Fact and Conclusions of Law.

## I. PROCEDURAL BACKGROUND

Armando Dominguez seeks final distribution of the estate of his late wife, Rita Dominguez. In his Petition for Closing and Final Distribution, Dominguez asks that Lot No. 5, Block No. 7, Asan, be distributed to himself as the sole heir. In opposition, Rita Dominguez's siblings Roque Manibusan, Juan Manibusan and Bernadetta San Nicolas claim that they are also heirs to Rita Dominguez's estate. The siblings provided a Memorandum Regarding Heirship

---

[1] The Law Offices of Gumataotao & Pole represent Armando Dominguez; Brooks Concepcion Law, P.C. represents Rita Dominguez's siblings.

ORIGINAL

claiming that Rita Dominguez has five siblings, all of whom are entitled to a share of Rita Dominguez's estate.

## II.    **FINDINGS OF FACT**

By a preponderance of the evidence, the Court hereby finds the following to be established as fact:

1. On April 16, 1974, Armando Dominguez married Rita Maanao Manibusan. Pl. Ex. 2. They never divorced.

2. Since 1974, Armando Dominguez has resided at 168 West San Carlos Street, Asan, located on Lot No. 5, Block No. 7, Asan ("Lot No. 5").

3. The residence is a two-story building.

4. On November 12, 1974, Rita Dominguez's mother, Martina Manibusan, executed a Quitclaim Deed granting, releasing and forever quitclaiming unto Martina Manibusan and Rita Dominguez "not as tenants in common but as joint tenants with right of survivorship" all the right, title and interest in Lot No. 5. Opp'n Obj'n, Ex. B (Oct. 25, 2017). The Quitclaim Deed further states that it was the "intention of all parties that in the event of the death of either of said Grantees, the entire fee simple title to the real estate shall vest in the surviving Grantee." *Id.*

5. According to Armando Dominguez, Martina Manibusan transferred the property to Rita Dominguez's name to allow the Dominguezes to mortgage the property and construct a marital residence. Opp'n Obj'n, Ex. A ¶ 8.

6. In 1978, the Dominguezes obtained an SBA loan to construct a two bedroom one bath marital residence. Opp'n Obj'n, Ex. A ¶¶ 15, 18. The residence eventually expanded

ORIGINAL

with a second floor. The Dominguezes undertook joint and several liability for the loan. Opp'n Obj'n, Ex. A ¶ 17.

7. Rita and Armando Dominguez paid the taxes on the property before and after the transfer. Opp'n Obj'n, Ex. A ¶¶ 7, 19, 21.

8. Martina Manibusan passed away in 1979. Opp'n Obj'n, Ex. A ¶ 9.

9. On November 10, 1981, the Department of Land Management issued a Certificate of Title certifying that Rita Dominguez as the owner in fee simple of Lot No. 5. Opp'n Obj'n, Ex. D.

10. On September 23, 1983, the Dominguezes executed a Note secured by a Mortgage on Lot No. 5. Pl. Ex. 3.[2] The Mortgage references both Rita Dominguez and Armando Dominguez as mortgagors, and recites the covenant that "MORTGAGOR is the owner in fee simple" of the property. *See* Submission Documents.

11. The Dominguezes maintained a joint bank account at Citibank, from which mortgage payments were made. Both spouses contributed funds to the joint account.

12. Rita Dominguez passed away in 2016, with no surviving issue.

13. Rita Dominguez is also survived by siblings, who object to Armando Dominguez's request to deem the property as community property.

14. Since 2008 or 2009, Roque Manibusan, one of Rita Dominguez's siblings, has lived in the upstairs unit of the residence, while Armando Dominguez lives downstairs. Roque Manibusan does not pay rent to Armando Dominguez.

15. While Rita Dominguez was still alive, Armando Dominguez wished to evict Roque Manibusan. However, Rita Dominguez refused.

---

[2] The Court admits this exhibit in evidence as a government record over the siblings' objection. *See* Submission Documents (Nov. 28, 2017) (demonstrating recordation of document).

ORIGINAL

## III.  CONCLUSIONS OF LAW

### A. Lot No. 5

#### 1.  Validity of 19 GCA § 6105(b)

Rita Dominguez's estate contains one real property asset, Lot No. 5, which she obtained from her mother via a Quitclaim Deed.  Guam law presumes that property acquired by marriage by either spouse qualifies as community property.  19 GCA § 6105(a).  However, the law contains an exception: "Property or any interest therein acquired during marriage by a woman *by an instrument in writing*, in her name alone, or in her name and the name of another person not her husband, *is presumed to be the separate property of the married woman* if the instrument in writing was delivered and accepted prior to July 1, 1980.  The date of execution or, in the absence of a date of execution, the date of acknowledgment, is presumed to be the date upon which delivery and acceptance occurred."  19 GCA § 6105(b) (emphases added).  Because Martina Manibusan executed the Quitclaim Deed prior to 1980, and conveyed property to her daughter, this law presumes the conveyed property to be Rita Dominguez's separate property.

Armando Dominguez claims that Lot No. 5 transmuted from separate property into community property.  However, before turning to transmutation, the Court must first examine Armando Dominguez's briefly stated challenge to the constitutionality of section 6105(b).  Opp'n Obj. at 4-5.  According to Armando Dominguez, because section 6105(b) pertains to women only, it violates the Equal Protection Clause.[3]

Generally a law that expressly discriminates on the basis of sex must have an

---

[3] Dominguez raises this challenge although he has not been unjustly punished or persecuted by this law.  To clarify, Dominguez has not been blocked from keeping inherited property as separate property because he is not a married woman.  *See contra Mississippi Univ. v. Hogan*, 458 U.S. 718 (1982) (suit brought by adult male denied admission to nursing university because of his sex).  Instead, Dominguez seeks to invalidate Section 6105(b) to nullify his deceased wife's separate property interest in Lot No. 5.

ORIGINAL

"exceedingly persuasive justification". *Kirchberg v. Feenstra*, 450 U.S. 455, 461 (1981).

However, well-established within equal protection jurisprudence is the concept that "a legislature may 'provide for the special problems of women'" without offending the Equal Protection Clause. *Michael M. v. Super. Ct of Sonoma Cty.*, 450 U.S. 464, 469 (1981) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 653 (1975)). Such statutory gender classification "reflect[] the fact that the sexes are not similarly situated in certain circumstances." *Michael M.*, 450 U.S. at 469. A gender-conscious remedial scheme will satisfy equal protection requirements if it directly protects the interests of the disproportionately burdened gender. *Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993).

The legislative history of section 6105(b), and its language, demonstrate an exceedingly persuasive justification for its enactment and continued enforcement. In 1980, the Legislature passed Public Law No. 15-113 under the express desire to "mak[e] the provision of the community property law of Guam apply equally to all persons regardless of sex." Public Law No. 15-113 also referenced Public Law No. 14-28, which expressed the Legislature's support for equal rights under the law regardless of sex. In spite of its effort to apply community property laws "equally to all persons regardless of sex," the Legislature preserved, through section 6105(b), a woman's right to keep as separate property property acquired: (1) in writing; (2) after marriage, and (3) prior to 1980.

The question is whether the Legislature's protective carve-out constitutes an exceedingly persuasive justification. To answer this question, the nation's oppressive history to such rights must be remembered. Previously a married woman's rights were directly tied to her husband. "Married women could not bring lawsuits in their own names to protect their financial interests; they could not act as trustees, estate executors, or legal guardians; and they could not make

ORIGINAL

contracts or transfer property unless they did so jointly with their husbands." Joseph A. Ranney, *Anglicans, Merchants, and Feminists: A Comparative Study of the Evolution of Married Women's Rights in Virginia, New York, and Wisconsin*, 6 Wm. & Mary J. Women & L. 493 (2000).[4]

Public Law No. 15-113 implicitly recognized those challenges for women, and preserved women's separate property under narrow circumstances: the married woman had to have been conveyed the property prior to 1980, and it must be in writing. As a whole, Public Law No. 15-113 strove to equate both spouses' community property rights, but the Legislature found it necessary to enact section 6105(b) so as not to cause a detriment to women who already had verified separate property rights. This Court finds that the Legislature's carve-out in section 6105(b), despite having a gender classification, in fact served an exceedingly persuasive justification to protect the property rights of an oppressed class. In other words, Armando Dominguez's constitutional challenge fails.

## 2.      Transmutation of Lot No. 5

Section 6105(b), however, carries a rebuttable presumption as to the nature of Rita Dominguez's ownership of Lot No. 5. Challenging the presumption, Armando Dominguez claims that the lot transmuted from separate property to community property. If spouses enter into contracts concerning their separate property, such contracts are required to "be in writing and executed and acknowledged or approved in like manner as a grant of land is required to be executed and acknowledged or approved." 19 GCA § 6112(a). The Legislature enacted section

---

[4] Referencing Norma Basch, *In the Eyes of the Law: Women, Marriage, and Property in Nineteenth-Century New York* (1982) (discussing the property rights of women) and Richard H. Chused, *Married Women's Property Law: 1800-1850,* 71 Geo. L.J. 1359 (1983) (tracing the development of women's property rights).

ORIGINAL

6112(a) *after* Rita Dominguez first acquired the lot at issue. Also the Legislature did not explicitly or implicitly make section 6112 retroactive,[5] meaning that it fails to apply to acts prior to the enactment of section 6112 on March 20, 1980.

Because section 6112(a) does not retroactively apply here, the Court looks to what standard must be used to prove a transmutation. The Court finds California caselaw prior to 1985 persuasive.[6] Prior to 1985 in California, an agreement between spouses changing the character of the property from separate to community need not be executed with any particular formality. 32 Cal. Jur. 3d Family Law § 623. A transmutation occurred if there was clear and convincing evidence that one spouse intended to effect a change in status of their separate property. *Beam v. Bank of Am.*, 490 P.2d 257, 266 (Cal. 1971) (en banc); *In re Marriage of Weaver*, 273 Cal. Rptr. 696, 701 (Cal. App. 1990). "The agreement may be either express or implied, and it need not be written." 32 Cal. Jur. 3d Family Law § 623.

While a transmutation need not occur in writing, California caselaw still required that a spouse's actions clearly indicate the spouse's intent. The following did not suffice to meet that showing: using community funds to improve one spouse's separate property; referencing the home as "our home;" occupation of the property by both spouses; and expending community funds to pay for taxes, utilities, and insurance. *In re Jafeman*, 105 Cal. Rptr. 483, 491-93 (Ct. App. 1973); *Beam*, 490 P.2d at 266. However, this is the type of evidence Armando Dominguez offers. Armando Dominguez claims he helped to pay the mortgage on the property; that he used it and considered it his marital home since the late 1970s; and that he helped pay the taxes on it.

Armando Dominguez also claims that the loan taken out in both spouses' names demonstrates transmutation, and that at the least he deserves reimbursement for his contribution.

---

[5] *See Jenkins v. Montallana*, 2007 Guam 12 ¶ 13 (retroactive application of statute must be made clear).
[6] In 1985, California enacted requirements similar to section 6112(a).

ORIGINAL

However, the general rule is that one obtains a reimbursement for using community funds to improve separate property only if consent was not received from the other spouse. *In re Marriage of Frick*, 226 Cal. Rptr. 766, 778-79 (Ct. App. 1986). In this case, Armando Dominguez willingly provided his earnings, which were community funds, to improve his wife's separate property. Such action is best described as a gift from Armando Dominguez to his wife, and not entitled to reimbursement.

Overall, despite Armando Dominguez's contributions to Rita Dominguez's separate property, the Court does not find clear and convincing evidence that Rita Dominguez intended to effect a change from separate property to community property. Overcoming the evidence presented by Armando Dominguez are three crucial facts. First, Armando Dominguez never presented evidence that she made any such affirmative declaration to him or any other person. Second, in the 37 years since the issuance of the Certificate of Title, Rita Dominguez made no attempt to amend the Certificate of Title to make clear that her husband should be listed as a registered owner. Third, Rita Dominguez denied Armando Dominguez's attempts to evict her brother. In other words, Rita Dominguez remained in sole control of the disposition of the property.

None of the evidence presented by Armando Dominguez, alone or in combination, persuades the Court to find that at any time Rita Dominguez intended to transmute the property she obtained from her mother into her community property with her husband. In other words the Court does not find clear and convincing evidence of a transmutation.

Having determined that Lot No. 5 remains the separate property of Rita Dominguez, it must be distributed according to the laws of intestacy. If the decedent leaves a surviving spouse, but no issue, the decedent's separate estate is distributed one-half (½) to such surviving spouse

ORIGINAL

and one-half (½) to the decedent's parents in equal shares; or if either is dead, to the survivor, or if both or dead to their issue and the issue of either of them, by right of representation. 15 GCA § 907. Rita Dominguez's siblings request that they receive ½ interest in her separate property, split equally among themselves or their survivors. Because Armando Dominguez did not object to the heirship calculations presented by the Objectors, the Court adopts the Objectors' calculation of heirship among themselves, and determines that Lot No. 5 must be distributed one-half to Armando Dominguez, and one-half among Rita Dominguez's siblings, specifically:

1. 1/10 to Roque Manibusan;

2. 1/10 to Juan Manibusan;

3. 1/10 to Bernadetta San Nicolas;

4. 1/10 to Anthony P. Manibusan as sole heir to Antonio M. Manibusan;

5. As to the heirs of Jose M. Manibusan, 1/30th to Cristina A. Manibusan; 1/150th to Maria M. Mesa; 1/150th to Pedro A. Manibusan; 1/150th to Jose A. Manibusan; 1/150th to Joseph A. Manibusan; 1/150th to Bernadita M. Cruz; 1/150th to Edita M. Taimanao; 1/150th to David A. Manibusan; 1/150th to Victor A. Manibusan; 1/150th to Antoinette M. Santos; 1/150th to Martha M. Harris; and 1/150 to Christopher A. Manibusan.

### B. Cash in Rita Dominguez's Accounts

Cash also remains in Rita Dominguez's name. "Upon the death of any married person, one half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, *and in the absence thereof goes to the surviving spouse.*" 15 GCA § 1001 ( (emphasis added). Since Rita died intestate, the full amount belongs to her surviving spouse, Armando Dominguez.

## IV.   CONCLUSION AND ORDER

ORIGINAL

Since Lot No. 5 did not transmute from Rita Dominguez to her husband Armando Dominguez, the Court finds that the property shall be distributed one-half to Armando Dominguez and one-half to Rita Dominguez's siblings, as described above.

Given the parties' strained relationship and the number of heirs, the Court recognizes that the parties may have difficulty assuming joint title to the property. The Court will hold a Status Hearing on March 21, 2018, at 9:30 a.m., at which time the parties may inform the Court of their agreement to sell the property, if any, or of any intention to buy out the interest of any other heirs, or whether the Court should direct the sale of the property and distribute the proceeds in accordance with the Court's findings.

SO ORDERED this 1st day of March 2018.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

**SERVICE** VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:

GUMATAOTAO & POLE

BROOKS CONCEPCION LAW

Date: 3·1·18    Time: 4:24 PM

Deputy Clerk, Superior Court of Guam

ORIGINAL